**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **Leon Tony Parker,** § | |
| **TDCJ #01940151,** § | |
| Plaintiff, § | |
| § | **CIVIL NO. 6:22-CV-00413-ADA** |
| v. § | |
| § | |
| **Bruce Armstrong, Et Al.,** § | |
| Defendants. | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants Michael Alsobrook, Bruce Armstong, and Daniel Parker, by and through the Office of the Attorney General of Texas, Motion for Summary Judgment. ECF No. 36. Defendants filed their motion on August 17, 2023. *Id.* Plaintiff Leon Parker responded on September 14, 2023. ECF No. 41. To which Defendants replied on September 21, 2023. ECF No. 44. After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant's Motion for Summary Judgment.

## BACKGROUND

Leon Tony Parker is an inmate in the Texas Department of Criminal Justice's ("TDCJ") custody. On April 22, 2022, Parker, proceeding *in forma pauperis* and at the time *pro se*, filed suit under 42 U.S.C. §1983, alleging an ongoing violation of his First Amendment right to free exercise. Specifically, Defendants told him cut his hair, which would violate his Rastafarian beliefs.

Rastafarians follow a way of living referred to as Ital. Foundationally, Ital calls for living from what Jah provides and minimally altering it. ECF No. 41-1. Ital's principles also require believers to let their hair take its natural course, not cutting or combing it. *Id.* Dreadlock's religious significance traces back to the Old Testament and the Nazarite vow of Numbers 6: "All the days

1

of the vow of the separation there shall no razor come upon his head until the days are fulfilled for which he separated himself to the Lord, he shall be holy, and shall let the locks of the hair of his head grow." Numbers 6:5. Parker, like many Rastafarians, took the same vow.

Defendants order that Parker cut his hair to comply with TDCJ guidelines resulted in him filing a Step 1 grievance on October 12, 2021. ECF No. 41-2. In the grievance, Parker requested to "grow long hair" following the Nazarite vow, which was directly in conflict with TDCJ guidelines at the time, preventing long hair of any style. *Id.* Parker listed four Bible verses to support his claim to grow his hair under the Nazarite vow: Numbers 6:5, Leviticus 21:5, Judges 13:5, and Judges 16:9. *Id.* Plaintiff listed Captain Daniel Parker as the staff member with whom he tried to resolve the dispute. *Id.*

Then, on November 12, 2021, Defendant Alsobrook's response to the grievance was for Plaintiff to fill out an "HQ-150 Request for Religious Accommodation form." *Id.* But Parker had filed an HQ-150 Request for Religious Accommodation on October 13, 2021, before Alsobrook's response. *See id.*; ECF No. 41-4. On the HQ-150, he again cited Numbers 6:5, Judges 13:5, and Judges 16:9. ECF No. 41-4. Appealing his Step 1 grievance, Parker filed a Step 2 grievance on November 24, 2021. ECF No. 41-2. The response given was:

> An investigation has been conducted into your complaint. SM-06.15, Procedures, l, A, 2, states; "Male offenders shall keep hair trimmed up the back of the neck and head." You were given instruction within the step 1 grievance response how to file a HQ-150 Request for Religious Accommodation form. No further action from this office is warranted.

*Id.* Following the response to his Step 2 grievance form, Parker filed this lawsuit on April 21, 2022, against Warden Bruce Armstong, Assistant Warden Michael Alsobrook, and Captain Daniel Parker. ECF No. 1.

Then on June 1, 2022, TDCJ altered the Inmate Grooming Policy to allow men to grow long hair. ECF No. 41-3. While allowing for longhair, the policy still forbids "fad or extreme haircuts or hairstyles," allowing only a single removable braid. *Id*. Parker amended his lawsuit on June 22, 2022, claiming that the TDCJ policy still violates his First Amendment right to free exercise. ECF No. 10.

## LEGAL STANDARDS

On a motion for summary judgment, a court will render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S. Ct. 936, 117 L. Ed. 2d 107 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest on mere allegations or denials but must set forth specific facts showing a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); Fed. R. Civ. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant, with the burden of proof at trial, must establish every essential element of its claim or affirmative defense. *Id*. at 322. In so doing, the moving party, without the burden of proof, need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id*. at 323-24. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." *Id*. at 324. The non-moving party must produce

"specific facts" showing a genuine issue for trial, not mere general allegations. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences for that party. *Est. of Aguirre v. City of San Antonio*, 995 F.3d 395, 402 (5th Cir. 2021). The Fifth Circuit has concluded, "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

## DISCUSSION

### I. Mootness

Lacking subject-matter jurisdiction renders a case moot. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 78–79, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013) The mootness doctrine "requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990). A case is moot "where (1) the controversy is no longer live or (2) the parties lack a personal stake in its outcome." *Id. at 867*. Defendants' Motion for Summary Judgment argues that this case is moot because it lacks a live controversy. The court disagrees.

Defendants argue that Parker's claim became moot once TDCJ altered its grooming policy, allowing long hair. *Pro se* complaints are to be construed liberally. *Thorn v. McGary*, 684 F. App's 430, 433 (5th Cir. 2017). So in construing the relief requested in Parker's first complaint, "[t]o be able to grow my hair like my prophet [S]amson, I have taken [the] vow of Nazarites," the Court

accepts that relief requested was to grow dreadlocks. Despite TDCJ's amended policy allowing long hair, dreadlocks are not allowed. ECF No. 41-3. As a result, the Court finds that the claim is not moot because a live controversy is present.

**II.     Standing**

Article III standing requires: (1) "the plaintiff must have suffered an injury in fact"; (2) there must be a causal connection between the injury and the conduct complained of; and (3) that "it must be 'likely,' as opposed to merely 'speculative,' the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). Defendants argue that the redressability requirement to establish Article III standing is absent after Parker's transfer from the Hughes Unit to the Ellis Unit, outside defendants' authority.

It is undisputed that Parker was transferred to the Ellis Unit. When an inmate challenges the confinement conditions at one facility, a transfer out of the facility usually renders claims for injunctive relief moot against defendants at the original unit. *Shafer v. Sanchez*. Narrow circumstances allow an inmate to avoid mootness if a system-wide policy leads to constitutional violations that persist no matter the unit. *See Oliver v. Scott; Escolona v. Collier; See also Lehn v. Holmes,* 364 F.3d 862 (7th Cir. 2004) (reversing district court's dismissal of inmate's complaint on mootness grounds, concluding that inmate was not seeking injunctive relief for a condition specific to a particular prison, but was seeking relief from a condition that stems from a system-wide policy); c.*f. Shafer v. Sanchez*. It is undisputed that TDCJ's active grooming policy does not allow dreadlocks. ECF No. 41-3. So even though Parker is outside defendants' control, because the violation stemmed from a TDCJ policy, the prospective relief requested is proper. Therefore, Article III standing is proper.

5

### III.     Exhaustiveness

The Prison Litigation Reform Act ("PLRA") requires a Plaintiff to exhaust all administrative remedies before bringing suit to challenge prison conditions. 42 U.S.C. §1997(e). There are no exceptions. *Ross v. Black*, 136 S. Ct. 1850, 1855, 195 L. Ed. 2d 117 (2016). There is no dispute that Parker fully exhausted his administrative remedies. There is a dispute over what *precisely* was grieved in the process.

Defendants argue that plaintiff only exhausted the administrative remedies for long hair, which TDCJ now allows. ECF 36 at 8–9; *See supra* p. 3. Defendants also argue that in Plaintiff's amended complaint he narrows his claim to seeking dreadlocks, which he did not properly exhaust. ECF 36 at 8. Plaintiff contends that there is at least a genuine dispute of material fact as to what was grieved by Parker. ECF 41 at 7. The Court agrees.

The Step 1 grievance form #2022018980 was received by TDCJ on October 18, 2021, alleging an incident on October 12, 2021. ECF No. 36-3. The response date is November 18, 2021. *Id.* TDCJ received Step 2 on November 24 and responded on December 15. *Id.* All timing requirements were satisfied, leaving only the content of the grievance. ECF No. 36 at 8; 41 at 7.

Defendants claim that grievance form #2022018980 did not specifically request dreadlocks; they are correct. That said, considering the entire grievance form, a genuine dispute of material fact exists. Parker's grievance makes it clear that his request to grow long hair is grounded in adherence to his faith. *See supra* p. 2. Accordingly, a genuine dispute still exists regarding what grievance form #2022018980 encompasses and whether the grievance aligns with the Court's finding of the claims in Plaintiff's amended complaint. *See infra* Section VII.

### IV. Injury

The PLRA requires that a Plaintiff suffer more than a de minimis injury to seek compensatory damages. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). In the PLRA's failure to define a physical injury, the Fifth Circuit applied Eighth Amendment standards, determining that a Plaintiff's "injury must be more than *de minimis*, but need not be significant" to entitle them to compensatory damages. *Id*. The injury must be physical. *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

While Plaintiff was deprived of recreation time and was further threatened with punishment for failing to cut his hair, that does not meet the 5th Circuit's physical injury bar. Plaintiff's claim for monetary relief is therefore dismissed.

### V. Qualified Immunity

Defendants attempt to raise a qualified immunity defense to the individual and official capacity claims. ECF No. 36 at 20. Qualified immunity bars suit against officers in their official capacity from liability for civil damages so long as their conduct does not violate a clearly established statutory constitutional right. *Chrissy F. by Medley v. Miss. Dep't. of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991). In their individual capacity, state officials are presumptively entitled to qualified immunity. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

While it has become common practice upon an assertion of qualified immunity to begin the analysis of plaintiff's rebuttal, this Court is bound by Fifth Circuit's holdings in *Cherry Knoll, L.L.C. v. Jones*, *Bevill v. Fletcher*, and *Sweetin v. City of Texas City* requiring a preliminary analysis of the action taken by Defendants. And just as in *Sweetin v. City of Texas City*, the "oft-overlooked threshold requirement is dispositive here." 48 F.4th 387, 392 (5th Cir. 2022). In raising a qualified immunity defense, the initial burden lies with Defendant in "establishing that the

challenged conduct was within the scope of [their] discretionary authority." *Bevill v. Fletcher,* 26 F.4th 270, 275 (5th Cir. 2019) (quoting *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019) (holding that before the qualified immunity inquiry discretionary authority must be established)). Then, "the burden shifts to the plaintiff to rebut the qualified immunity defense." *Id*. Officials act within their "discretionary authority when [they] perform[] non-ministerial acts within [the] boundaries of [their] official capacity." *Cronen v. Tex. Dep't of Hum. Servs.*, 977 F.2d 934, 939 (5th Cir. 1992). Action taken outside an official's discretionary authority is ministerial. *See Morris v. Dearborne*, 181 F.3d 657, 674 (5th Cir. 1999). Discretionary authority is a necessary showing for both official and individual capacity qualified immunity assertions. *Cherry Knoll* 922 F.3d at 318; *See Hicks v. Brysch*, 989 F.Supp. 797, 817 (W.D. Tex. 1997) (establishing an officials task as discretionary before continuing the analysis when seeking monetary damages in defendants' individual capacity). Ministerial acts alone do not give rise to a qualified immunity defense.

The scope of discretionary action is determined by relevant state law. *Sweetin,* 48 F.4th at 392. "Ministerial actions 'require obedience to orders or the performance of a duty to which the actor has no choice . . . . On the other hand, if an action involves personal deliberation, decision and judgment, it is discretionary. . . .'" *Morris*, 181 F.3d at 674 (alterations in original) (quoting *Downing v. Brown*, 935 S.W.2d 112, 114 (Tex. 1996)). Determining if an action is a discretionary duty or ministerial act involves an analysis of the policy guiding the governmental employee. *City of Houston v. Nicolai*, No. 01-20-00327-CV, 2023 WL 2799067 at *18 (Tex. App.–Houston [1st Dist.] Apr. 6, 2023. If the policy allows "no leeway for individual deliberation," then it should be classified as ministerial. *Ibid.*

The TDCJ Inmate Grooming policy gives officers no authority to deliberate or decide on inmate compliance. *See generally* ECF No. 41-3. Section A specifies what types of hairstyles are permitted and what are not. *Id.* Section A does not mince words that "[n]o fad or extreme haircuts are permitted, including . . . dreadlocks . . . ." *Id.* Because the policy does not permit any individual deliberation in determining inmate compliance with the policy, defendants action when doing so were ministerial. Section D requires inmates refusing to comply to be charged with a specific offense code. *Id.* Thus in punishing inmates out of compliance defendants were also performing a ministerial action. Section C does require deliberation. To receive a religious exception, inmates can submit an "HQ-150 to the unit chaplain, who will refer the request through the Religious Practices Committee." *Id.* While the Religious Practice Committee's action is discretionary, defendants' is not. *See Leo v. Trevino*, 285 S.W.3d 470, 484 (Tx. App. 2006). Because the TDCJ's inmate policy requires defendants' obedience their actions were ministerial. Thus, the Court must follow the precedent and rule Defendants cannot raise a qualified immunity defense in either capacity because their challenged actions were ministerial.

### VI.    First Amendment Claim

Prisoners retain their First Amendment rights while incarcerated. That said, they do not enjoy it in the same breadth that non-incarcerated Americans do. *See Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L. Ed. 2d 495 (1974). Incarcerated individuals' First Amendment rights end where the state's reasonable, legitimate penological interest begins. *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L. Ed. 2d 64 (1987)).

Determining the reasonableness of a prison regulation turns on four factors: (1) if a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put

forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation will have on guards and other inmates, and on the allocation of prison resources generally," (4) whether there are "alternative[s] that could fully accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests . . . ." *Turner*, 482 U.S. at 89–91 (1987).

No single factor is dispositive, and there is no requirement that all four factors be met. *Scott v. Miss. Dept. of Corr.*, 961 F.2d 77, 80 (5th Cir. 1992). When a regulation restricts First Amendment rights neutrally, it is more likely to withstand judicial scrutiny. *McAlister v. Livingston*, 348 Fed. Appx. 923, 931–932 (2009) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 415, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989)). Furthermore, where a regulation restricts one aspect of an offender's belief system, but the offender can participate in his faith's other religious observances, such a regulation is reasonable. *Id.* (citing *O'Lone*, 482 U.S. at 352). An inmate bears the burden of proving "that a prison policy, as applied, is not reasonably related to legitimate penological objectives." *DeMarco v. Bynum*, 50 F.4th 479, 482 (5th Cir. 2022). Prison officials "are entitled to substantial deference in the exercise of their professional judgment." *Id.*

Defendant relies on the prevalence of contraband, the risk to searching officers, inmate rehabilitation, and costs to establish a valid, rational connection between the regulation and governmental interest. ECF No. 36. Plaintiff responds that many jurisdictions allow dreadlocks, relying on expert testimony and a survey of other jurisdictions' policies. ECF No. 41. At its core Defendants' argument posits that costs and safety are the interests undergirding TDCJ's grooming policy. ECF No. 36 at 13–18. TDCJ's policy prohibits dreadlocks for all inmates because weapons or other contraband may be hidden, posing a security threat to officers, staff, and offenders. *Id.* Plaintiff is allowed to participate in various forms of religious expression and does so. *Id.* at 18.

For example, he currently adheres to the Ital diet. *Id.* Consequently, TDCJ's grooming policy does not violate the First Amendment because it bears a rational relation to TDCJ's legitimate security interests.

Plaintiff response that TDCJ's categorical ban on locks is irreconcilable with the majority of other jurisdictions, and therefore has no valid rational connection, is misguided. Plaintiff relies on *Holt v. Hobbs* to ground their argument. ECF No. 41 at 14. Yet *Holt*'s holding bares no weight First Amendment cases. *See* discussion *infra* Section VII. So, Plaintiff's jurisdictional survey and expert testimony is aimed at the wrong target and therefore does not move the needle. *Id.* at 11–13; ECF No. 41–6.

Thus, Defendants are entitled to summary judgment on Plaintiff's First Amendment claim as a matter of law.

## VII.   RLUIPA

Defendants moved for summary judgment on Plaintiff's First Amendment claim. ECF No. 36. Plaintiff responded to the arguments for summary judgment while preempting a defense to their claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA). ECF No. 41. In Defendants' reply brief, they argue that Plaintiff did not raise a RLUIPA claim and cannot do so for the first time in their response to summary judgment. ECF No. 44. Defendants' argument is unfounded.

Federal Rule of Civil Procedure 8(a)(2) requires "a short plain statement of the claim showing that the pleader is entitled to relief." The statement must "'give the defendant fair notice of what the… claim is and the ground on which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A pro se complaint is "to be liberally

11

construed… [even when] inartfully pleaded." *Id.* (quoting *Estelle v. Gamble,* 429 U.S. 97, 104–105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

Defendants, in their initial answer and answer to the amended complaint, admit the existence of Plaintiff's RLUIPA claim. ECF No.'s 8, 12. Notice alone provides that Plaintiff's RLUIPA claim was adequately pled. Even if Defendants did not admit it, the RLUIPA claim would survive on its own. Plaintiff's burden under RLUIPA is to show "that his religious exercise is grounded in a sincerely held religious belief and that the government's action substantially burden[ed] his religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 352–53, 135 S.Ct. 853, 190 L. Ed. 2d 747 (2015). Plaintiff's amended complaint sufficiently pleads both his sincerely held religious belief and a substantial burden from the government in his religious exercise. So, on both fronts, Plaintiff has a live RLUIPA claim, and as Defendant admits, has ever since the initial pleading.

So, Defendants' moved for summary judgment only on the First Amendment claim. When alerted to the RLUIPA in Plaintiff's response, rather than rebut the claim, Defendants only attacked its existence. ECF No. 44. Therefore the Court finds that the RLUIPA claim survives summary judgment.

### VIII.   RLUIPA Qualified Immunity

"[Q]ualified immunity is more than 'a mere defense to liability.' It's also 'an immunity from suit.'" *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 172 L. Ed. 2d 565 (2009)). While qualified immunity is an immunity from suit, Defendant falsely conflates that with absolute immunity. The *Carswell* court's clarification was not one of scope but was instead temporal. Rather than extending a finding of qualified immunity on any claim to apply to all claims, *Carswell* reiterates that qualified immunity

claims must be resolved early in the stream of litigation. *Id.* Because the same events are the root of both claims the court finds that Defendants, just as with the First Amendment claim, cannot raise a defense of qualified immunity.

## CONCLUSION

For these reasons, it is hereby **ORDERED** that the movant's motion for summary judgment is **GRANTED-IN-PART** as to the First Amendment claim and monetary relief sought, while **DENIED-IN-PART** as to the remaining arguments.

**SIGNED** this 7th day of August, 2024.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE